UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**LUCILMA IRIS RIVERA JIMENEZ,**

**Plaintiff,**

        v,

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:19-cv-0004-TPK

OPINION AND ORDER

## OPINION AND ORDER

      Plaintiff Lucilma Iris Rivera Jimenez filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on November 2, 2018, denied Ms. Jimenez's application for social security disability benefits.  Ms. Jimenez has now moved for judgment on the pleadings (Doc. 10) and the Commissioner has filed a similar motion (Doc. 11) .  For the following reasons, the Court will **DENY** Plaintiff's motion (Doc. 10), **GRANT** Defendant's motion (Doc. 11), and direct the Clerk to enter judgment in favor of the Defendant Commissioner.

### I.  BACKGROUND

      Plaintiff's application for disability insurance benefits was filed on June 4, 2015.  She alleged that she became disabled on August 15, 2014, primarily due to psychological disorders.  She was 35 years old at the time her application was filed.

      After initial administrative denials of her claim, Plaintiff appeared and testified at a video administrative hearing held on August 29, 2017.  A vocational expert, Shannon Hollander, also testified at the hearing.

      The Administrative Law Judge issued an unfavorable decision on February 27, 2018.  She first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that she had not worked since her alleged onset date.  Next, the ALJ concluded that Plaintiff suffered from severe impairments including generalized anxiety disorder, bulimia nervosa, post-traumatic stress disorder, asthma, and cervicalgia.  The ALJ did not find that any of these impairments met the criteria for disability under various sections of the Listing of Impairments.  Next, the ALJ determined these impairments limited Plaintiff to the performance of a reduced range of medium work.  She could perform all of the exertional requirements of medium work but had to avoid concentrated exposure to extreme cold and heat, wetness,

humidity, fumes, odors, dust, gases, and poor ventilation. From a psychological standpoint, she could work only at low stress jobs, defined as having no production quotas, only occasional decision-making, and only occasional workplace changes.

The ALJ determined that with these restrictions, Plaintiff could not perform her past relevant work. Ms. Hollander, the vocational expert, was asked whether a person with the work capacity described by the ALJ could do any other jobs which existed in the national economy. In response, she identified jobs such as laundry worker, small parts assembler, and order clerk. If, however, the person could not complete a normal workday and work week without interruption from psychologically-based symptoms, could not perform at a consistent pace without an unreasonable number of rest periods, and could not accept instructions and respond appropriately to criticism, that person was not employable.

The ALJ accepted the vocational testimony given in response to her first hypothetical question and concluded that Plaintiff could perform the jobs identified by the vocational expert. Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, asserts five claims of error. She argues: (1) that the ALJ improperly rejected the testimony of treating source Dr. Bayoumi; (2) the ALJ did not properly interpret the opinion of Dr. Ippolito, a consultative examiner; (3) the residual functional capacity finding is not supported by substantial evidence; (4) the ALJ did not properly evaluate Plaintiff's impairments under the Listing of Impairments; and (5) the ALJ did not account for limitations stemming from various severe impairments.

## II. THE KEY EVIDENCE

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.

Plaintiff first testified that she had attended college in 1999 or 2000 but did not earn a degree. She had a number of jobs over the years including bank teller, cashier, and call center representative. She had not worked since August of 2014, however. At the time of the hearing, she was living with three of her children. She did the grocery shopping and cooking for her household. She also made sure her children attended school and were involved in mental health counseling and outside activities. She received assistance from a caseworker and a family advocate.

Her most serious condition, Plaintiff said, was actually a combination of impairments including PTSD, anxiety, depression, bulimia, and migraine headaches. She was seeing a nurse practitioner every two to three months for both counseling and medication management and was also seeing a counselor several times per month. She had been getting injections to manage her migraines but stopped due to side effects. She took ibuprofen daily to deal with headaches and it

did not eliminate them but it took the edge off.  Plaintiff also had daily anxiety and used her bulimia to try to control her life, but it affected her nutrition and caused fatigue and other physical problems. She also had developed problems with her back.

The vocational expert, Ms. Hollander, testified next.  She identified all of Plaintiff's past work as either skilled or semi-skilled and, as noted above, said that someone with the functional capacity described by the ALJ could not do any of those jobs.  She identified representative jobs at the medium, light, and sedentary exertional levels which such a person could perform, however.

The key medical records consist mostly of the various opinions from treating, non-treating, and non-examining sources, because Plaintiff's arguments focus mainly on the way in which the ALJ evaluated those opinions.  The Court will summarize each briefly.

As early as 2013, in notes from Spectrum Human Services, Plaintiff was described as suffering from panic attacks, a high level of anxiety, and an eating disorder.  She was struggling with the stress of working full-time and raising four disabled children.  She stopped working in 2014 but was stressed by the lack of income.  Her symptoms included difficulty focusing, trouble sleeping, and feelings of hopelessness.  By late 2014, her symptoms were described as severe and she was in need of psychiatric stabilization.  She submitted a claim for disability to her employer's insurance carrier; an evaluation done by that company's consultant, Dr. Sugerman, indicated that opinions supporting her claim were "not supported by detailed and objective data" and that her ability to manage her household and "contradictory factors in the record" belied her claim of disability. (Tr. 351-57).  By contrast, her family physician, Dr. Bayoumi, had stated on a form completed on August 15, 2014, that Plaintiff would be unable to work for at least three months due to complications from her psychological impairments, including inability to focus, anxiety, and depression. (Tr. 457-58).

On July 24, 2015, Plaintiff saw Dr. Ippolito, a psychologist, for a consultative evaluation.  Plaintiff told Dr. Ippolito that she had trouble sleeping, suffered from crying spells, and had difficulty concentrating.  She also suffered from nightmares and flashbacks.  She did not report any panic attacks, manic symptomatology, or thought disorders.  Her typical day included caring for her children and attending appointments.  Dr. Ippolito noted that Plaintiff's affect was dysphoric and her mood was dysthymic.  Her attention and concentration were intact and her memory skills were mildly impaired.  She could, however, follow simple instructions, perform both simple and complex tasks independently, relate adequately to others, maintain attention and concentration with mild limitations, and deal with stress appropriately "with moderate to marked limitations."  Dr. Ippolito also said that Plaintiff's problems might "significantly interfere" with her "ability to function on a daily basis." (Tr. 500-05).  A physical evaluation done the same day by Dr. Miller showed that Plaintiff had to avoid dust, irritants, and tobacco exposure and that she had mild limitations in heavy lifting, bending, carrying, pushing, and pulling. (Tr. 506-10).

The record also contains a form filled out by the nurse practitioner who had been treating Plaintiff since 2014 for psychological her conditions.  The practitioner, David Pfalzer, concluded

that Plaintiff could not work because "her mental health is a barrier." (Tr. 528-29). He also filled out a questionnaire stating that Plaintiff had marked restrictions in her activities of daily living and maintaining social functioning and an extreme restriction in her ability to maintain concentration, persistence, and pace, and that she had experienced one or two episodes of decompensation within the last 12 months. He noted that she was unable to meet competitive standards, or that she lacked any ability to function, in numerous work-related areas. (Tr. 640-45). Treatment notes show that throughout the time she was being treated, Plaintiff was struggling with "an immense amount of chaos and stress at her home" but that she had improved somewhat in 2016. By 2017, she described her mental health symptoms as stable, and she was seeing a counselor only on a quarterly basis. *See, e.g.,* Tr. 714-15.

State agency reviewers also assessed Plaintiff's functional capacity. From a physical standpoint, she was deemed to be able to lift up to fifty pounds and stand, walk, and sit for at least six hours in a workday, but had to avoid concentrated exposure to extremes of temperature, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. Psychological restrictions included moderate limitations on her ability to remember locations and work-like procedures and to maintain attention and concentration for extended periods. She also was moderately limited in her ability to complete a normal workday and work week without interruption from psychologically-based symptoms, to accept supervision, to maintain appropriate behavior, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independent of others. (Tr. 79-84).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence

standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

### A. The ALJ's decision

Because Plaintiff's claims of error mostly relate to how the ALJ dealt with the opinion evidence, the Court will first set forth in some detail the relevant portions of the ALJ's decision.

First, the ALJ accurately summarized the information from the rather voluminous treatment notes, reporting that Plaintiff suffered from great stress at home (and, later, from lack of income), that she was being treated for mental disorders including generalized anxiety disorder, bulimia, major depressive disorder, and PTSD, that she had undergone weekly or semi-weekly counseling since 2014, and that the treatment was somewhat helpful in managing her symptoms. She continued to report stress throughout 2015 as well as increased binging and purging behavior. By 2016, however, her condition had improved to the point where she was looking to find new housing and had a more positive outlook. Despite additional stressors in late 2016, by 2017 Plaintiff had moved, her stressors were reduced, and medication was helping her to concentrate and focus.

The ALJ then reviewed the opinion evidence. She gave significant weight to the state agency reviewer's assessment as being rendered by an expert and as consistent with the medical evidence. Next, she assigned little weight to Dr. Bayoumi's opinions about Plaintiff's mental capacity, reasoning that it was "inconsistent with the evidence as a whole and not supported by the objective medical evidence." (Tr. 19). She also noted that the issue of disability is one reserved to the Commissioner. Further articulating her rationale, the ALJ stated that "there is no evidence that the claimant was precluded from work activity by her mental health symptoms and limitations." *Id*. Thirdly, she gave great weight to Dr. Ippolito's opinion, which she summarized accurately, including the part where Dr. Ippolito said Plaintiff had moderate to marked limitations in dealing appropriately with stress. The ALJ said she accommodated these limitations by restricting Plaintiff to the performance of low-stress work. *Id*.

The last opinion which the ALJ addressed was that of David Pfalzer, the nurse practitioner. The ALJ gave two reasons for assigning little weight to his conclusions: that they were inconsistent with the evidence as a whole, including the fact that Plaintiff's symptoms responded to treatment, and that determinations as to disability are reserved to the Commissioner.

(Tr. 20). The ALJ also factored into her decision the fact that Plaintiff's own statements about disability were not supported by the record, noting that Plaintiff's mental health issues appeared to be situational in nature and that notwithstanding her impairments she was able to manage her household and care for her children. (Tr. 21).

### B. The Treating Source Opinions

As noted above, both Dr. Bayoumi and Nurse Practitioner Pfalzer expressed the opinion that Plaintiff had psychological limitations which are inconsistent with maintaining gainful employment. Plaintiff claims the ALJ erred in her analysis of these opinions, pointing out that the ALJ's first reason for rejecting Dr. Bayoumi's views - that no evidence supported the existence of mental limitations which prevented Plaintiff from working - is both conclusory and inaccurate. She cites to various portions of the record showing that she experienced significant mental health symptoms, like feeling overwhelmed or having difficulty concentrating, and that she engaged in significant behaviors like purging. She also argues that by giving greater weight to the opinions of the consultative and non-examining sources, the ALJ unduly discounted Dr. Bayoumi's contrary opinion. She makes similar arguments with respect to Mr. Pfalzer's opinion, asserting that it, too, was supported by the evidence and that the ALJ's explanation for rejecting it is too conclusory. The Commissioner, in turn, argues that the ALJ correctly gave little weight to any opinions which simply concluded that Plaintiff could not work, and that the evidence does not, as the ALJ asserted, support a finding of work-preclusive functional limitations, especially when any contrary evidence consists largely of Plaintiff's own subjective descriptions of her symptoms and their impact on her ability to function. In reply, Plaintiff contends that if the basis of Dr. Bayoumi's opinion was unclear, the ALJ could have recontacted him for clarification; that there is objective, as well as subjective, evidence supporting her complaints; and that the Commissioner's attempt to discount Mr. Pfalzer's opinions based on Plaintiff's stress being situational is a misreading of the record.

As far as treating sources are concerned, the Court of Appeals has stated that

> "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.' " [*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008)] at 128 (quoting 20 C.F.R. § 404.1527(c)(2)). There are, of course, circumstances when it is appropriate for an ALJ not to give controlling weight to a treating physician's opinion. *See, e.g., Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (holding that "the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining

> how much weight the opinion should receive. See 20 C.F.R. § 404.1527(c)(2)(I), (2)(ii), (3)–(6). "[T]o override the opinion of the treating physician, we have held that the ALJ must explicitly consider, inter alia: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam). "After considering the above factors, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Burgess*, 537 F.3d at 129 (alteration in original) (*quoting Halloran*, 362 F.3d at 33). The failure to provide " 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id*. at 129–30 [citation omitted]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. *Id*. at 131.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015).

To be sure, the ALJ could have provided a more detailed explanation of her decision not to assign significant weight to the opinions of the treating physician and nurse practitioner. However, the record does provide support for the ALJ's conclusions that Plaintiff was experiencing a great deal of situational stress - that comes from her own reports - and that the treatment she received eventually resulted in an improvement in her condition to the extent that her counseling sessions were reduced to quarterly.  Further, it is true that much of the basis for both opinions is subjective reporting; that is characteristic of psychological illnesses, of course, but here, the ALJ found Plaintiff's self-reports of disabling symptoms not to be fully credible, and Plaintiff has not challenged that finding.  The objective findings to which Plaintiff refers pertain largely to her bulimia, which does not appear to be the basis on which either Dr. Bayoumi or Mr. Pfalzer found that she would difficulty working.  Overall, the Court cannot say that the ALJ's decision to assign only little weight to either treating source opinion lacked substantial support in the record.  Therefore, the Court finds no merit to Plaintiff's first claim of error.

### C. The Consultative Examiner's Opinion

As her second claim of error, Plaintiff contends that the ALJ erred by giving great weight to Dr. Ippolito's opinion and then disregarding the functional limitations contained in that opinion. Specifically, she notes that Dr. Ippolito found that Plaintiff's ability to cope with stress was moderately to markedly limited, but that the ALJ concluded that Plaintiff could make work-related decisions and adapt to changes in the workplace for up to one-third of the workday.  She asserts these conclusions are irreconcilably inconsistent and that the ALJ did not properly take Plaintiff's stress-related limitations into account in fashioning Plaintiff's residual functional capacity.  The Commissioner, however, contends that restricting Plaintiff to the performance of jobs in a low-stress environment adequately accounted for the functional limitations identified in Dr. Ippolito's evaluation.  In reply, Plaintiff argues that the ALJ failed to follow the principle, set

out in a line of cases including *Silsby v. Comm'r of Social Security*, 2019 WL 3764616 (W.D.N.Y. Aug. 9, 2019), that an ALJ must make specific findings as to the functional limitations caused by stress if a claimant is found to have an impairment in that area.

The quotation found in Plaintiff's reply memorandum (Doc. 12, at 3), taken from *Silsby* and represented to be the reasoning of this Court in that case, is troubling. *Silsby* is a decision in which the Commissioner prevailed; there, among other things, the Court concluded that when the ALJ posed a hypothetical question about the claimant's ability to handle stress (limiting the claimant to performing a "low-stress job ... defined as having only occasional decision making required and only occasional changes in the work setting,"), the ALJ appropriately accounted for stress-based limitations. Plaintiff, however, has quoted contrary language from the *plaintiff's brief* - an argument the *Silsby* Court rejected - as if that represented the Court's holding. Counsel should avoid that type of error in the future.

This Court chooses to follow the reasoning applied by the Court in *Silsby* and in other cases such as *Herb v. Comm'r of Social Security*, 366 F.Supp.3d 441, 447 (W.D.N.Y. 2019), which noted that "an RFC limiting a plaintiff to occasional interaction with co-workers and the public, and to the performance of simple, routine tasks, may account for the plaintiff's stress-related limitations." Here, the ALJ did limit Plaintiff to the performance of low stress jobs, which she defined as having no production quotas, only occasional decision-making, and only occasional workplace changes. Those are specific functional limitations, and the Court therefore rejects Plaintiff's argument that the ALJ failed to make specific findings about the way in which Plaintiff was able to manage workplace stress.

### D. The Physical Residual Functional Capacity Finding

Next, Plaintiff focuses on the physical functional capacity finding made by the ALJ. As noted above, the ALJ found that Plaintiff could perform a reduced range of medium work, which includes the ability to sit, stand, and walk for up to six hours in a workday. She asserts that this finding lacks support in the record and that there is contrary evidence, including Plaintiff's need to use a nebulizer every four to six hours to treat her asthma. The Commissioner responds that Plaintiff had the burden to show that she had physical limitations that affected her ability to work, that an ALJ may base a residual functional capacity finding on the evidence even without a specific opinion as to a claimant's physical capabilities, and that Dr. Miller, the consultative examiner, imposed only mild restrictions on Plaintiff's ability to lift heavy objects, a limitation which the Commissioner equates to the ability to do medium work. Plaintiff argues, in reply, that Dr. Miller's opinion is an insufficient basis for a residual functional capacity finding because she "gave no opinion as to sitting, standing, and walking." Reply Memorandum, Doc. 12, at 4.

The Commissioner accurately represents Dr. Miller's opinion concerning lifting heavy objects, and the Court finds no error in the ALJ's determination that this opinion is consistent with the lifting requirements of medium work. As the Commissioner points out, this Court made the same finding in *Houston v. Comm'r of Social Security*, 2019 WL 1529472, *7 (W.D.N.Y.

Apr. 8, 2019), based on the same consultative examiner's findings, stating that "[t]he Court further notes that the RFC for medium work with limitations is supported by the opinion of the consultative examiner, Donna Miller, D.O., who opined after an examination on March 18. 2015, that Plaintiff had mild limitations for heavy lifting, bending, carrying, pushing, and pulling." As to standing, walking, and sitting, which are also requirements of medium work, Dr. Miller imposed no restrictions on those activities, and the record reflects that Plaintiff's primary limitations - as Plaintiff herself stated - stemmed from psychological impairments. Finally, the vocational expert identified not only medium work within Plaintiff's physical capabilities, but light and sedentary work as well. Plaintiff presents no credible argument that she did not retain the physical ability to do sedentary work, and her past work - which, she testified, she discontinued due to the effects of her psychological impairments - was performed at either the light or sedentary exertional levels. Finally, there is simply nothing in the record supporting Plaintiff's claim that her occasional use of a nebulizer somehow prevented her from performing the requirements of work at any exertional level. This claim of error is therefore insufficient to justify reversing the ALJ's decision.

### E.  The Listing of Impairments

In her fourth claim of error, Plaintiff submits that the ALJ did not provide a sufficient explanation for her findings that Plaintiff's mental health symptoms were not severe enough to meet the criteria for disability under the applicable sections of the Listing of Impairments (Sections 12.06 and 12.13). The ALJ made findings about Plaintiff's ability to function in various spheres, finding that Plaintiff's impairments did not produce an impact sufficient to satisfy the "B" criteria applicable to mental impairments. In explaining those findings, she referred to later portions of the decision which also addressed the severity of Plaintiff's mental impairments. Plaintiff contends that those later portions do not constitute an adequate explanation. The Commissioner responds that Plaintiff had the burden of showing that her impairments were of the required severity and that the record simply does not support that conclusion.

This Court has explained, in these words, the obligation imposed on an ALJ to explain the logical relationship between the medical evidence and the conclusion that a claimant does not suffer from an impairment of sufficient severity to meet or equal a listed impairment:

> An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood* [ *v. Astrue*], 614 F.Supp.2d [252 (N.D.N.Y. 2009), *adopted,* 614 F.Supp.2d 252 (N.D.N.Y. 2009)] at 273 (quoting *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 52 (W.D.N.Y. 2002) ) (alteration in original). "[I]t is the ALJ's responsibility ... to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered."

> *Loescher* [v. *Berryhill*, 2017 WL 1433338 (W.D.N.Y. Apr. 24, 2017)], at *3, 2017 U.S. Dist. LEXIS 61642, at *7 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F.Supp.3d 493, 507 (S.D.N.Y. 2014) (citation omitted)

*Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019).

There is no specific prohibition against an ALJ's incorporating a later section of her decision as support for her findings about whether a claimant qualifies for disability under the Listing of Impairments. As the ALJ noted, in order to satisfy the "B" criteria for mental impairments, a claimant must show that she has either one extreme or two marked limitations in the following areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing oneself. (Tr. 14). The ALJ found that Plaintiff had a mild limitation in the first three areas and a moderate limitation in the fourth. The Court finds that the balance of the ALJ's decision adequately addresses these areas of functioning, particularly when the ALJ addresses Plaintiff's residual mental functional capacity. While it might have been better practice had the ALJ also cited the bases for her conclusions in the portion of the decision dealing with the Listing of Impairments, the weight she assigned to the various opinions of the treating, consultative, and reviewing sources and her discussion of those opinions demonstrates why she concluded that Plaintiff had neither two marked nor one extreme limitation in the functional areas addressed in the "B" criteria. On this particular record, that is sufficient. The Court therefore finds no reversible error based on this claim.

### F. Other Impairments

Lastly, Plaintiff points out that she had numerous impairments including anxiety, PTSD, and bulimia. She argues that although these impairments caused her to experience symptoms, the ALJ did not account for those symptoms when arriving at a residual functional capacity assessment. The Court finds this argument largely duplicative of Plaintiff's contention concerning the ALJ's assessment of the opinion evidence concerning her mental impairments, and for the same reasons finds that it lacks merit. Therefore, the Court will affirm the Commissioner's decision denying Plaintiff's applications for benefits.

### V. CONCLUSION AND ORDER

For the following reasons, the Court **DENIES** Plaintiff's motion (Doc. 10), **GRANTS** Defendant's motion (Doc. 11), and directs the Clerk to enter judgment in favor of the Defendant Commissioner.

**/s/ Terence P. Kemp**

**United States Magistrate Judge**

-11-